IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATHY D. H., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   No. 21 C 5992 |
| | ) |
| MARTIN J. O'MALLEY, | )   Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Plaintiff Cathy D. H. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying in part her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court now grants the Commissioner's motion.

## BACKGROUND

Plaintiff protectively applied for DIB and SSI on April 13, 2017, alleging disability since January 10, 2017 due to bilateral carpal tunnel syndrome. (R. 173, 180, 203). Born in September 1986, Plaintiff was 30 years old as of the alleged disability onset date (R.

---

[1]     Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

173, 180), making her at all times a younger person. 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c). She graduated from high school and lives alone in an apartment. (R. 34, 204, 1103). Plaintiff spent approximately 8 years serving in the U.S. military between September 2005 and December 2013, and was deployed twice to Iraq and once to Afghanistan. (R. 50, 204). After leaving the service, Plaintiff completed training as a pharmacy technician in 2015 and worked in that capacity for one year. (R. 39-40, 203-04). She lost her pharmacy job after testing positive for marijuana and took a position as an Amazon packer in November 2016. (R. 38-39, 203). Plaintiff was fired on January 10, 2017 and has not engaged in any substantial gainful activity since that date. (R. 36-37, 203).

The Social Security Administration denied Plaintiff's applications at all levels of review. She appealed to the district court and the parties agreed that the case should be remanded to the Commissioner for further proceedings. (R. 1172-73). On March 16, 2021, the Appeals Council vacated the final decision of the Commissioner and remanded the case to administrative law judge Nathan Mellman (the "ALJ") with instructions to: give further consideration to the medical source opinions and prior administrative medical findings; reevaluate whether Plaintiff's impairments meet or equal a listing; further evaluate Plaintiff's subjective statements about her symptoms; give further consideration to Plaintiff's maximum residual functional capacity ("RFC"); and obtain supplemental evidence from a vocational expert if warranted. (R. 1178-79).

The ALJ held a supplemental hearing on August 10, 2021 and heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Tobey Andre

2

(the "VE").[2] (R. 1084-1137). On August 31, 2021, the ALJ found that Plaintiff suffers from the following severe impairments: schizoaffective disorder, post-traumatic stress disorder ("PTSD"), depressive disorder, generalized anxiety disorder, bilateral carpal tunnel syndrome status post left carpal release, and cubital tunnel syndrome. (R. 1055). At no time, however, have the impairments met or equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 1056-61, 1071). After reviewing the medical and testimonial evidence in detail, the ALJ concluded that from January 10, 2017 through April 12, 2017, Plaintiff retained the RFC to perform light work with certain exertional limitations related to her carpal tunnel and cubital tunnel syndrome. (R. 1061-64). The VE testified that a person with this RFC could perform Plaintiff's past work as a pharmacy technician, as well as a significant number of other jobs available in the national economy. (R. 1122-23). The ALJ thus concluded that Plaintiff was not disabled during the three-month period beginning January 10, 2017. (R. 1064-66).

From April 13, 2017 through November 12, 2018, Plaintiff still had the same capacity for light work but also required certain non-exertional limitations and would be off-task for more than 15% of the workday and/or absent from work more than two days per month as a result of her mental impairments. The VE testified that with these restrictions, Plaintiff could not perform her past work and there were no other jobs available to her in the national economy. (R. 1124-25). For this reason, the ALJ concluded that Plaintiff was disabled during that period. (R. 1066-71). Beginning November 13, 2018, Plaintiff experienced medical improvement allowing her to perform medium work with no further concerns about absences or off-task time. (R. 1071-74).

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

3

The ALJ accepted the VE's testimony that a person with Plaintiff's background and RFC could perform a significant number of jobs available in the national economy and so found her no longer disabled. (R. 1075-77, 1126-30). The ALJ's decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Plaintiff does not challenge any aspect of the ALJ's determination that she was disabled from April 13, 2017 through November 12, 2018, or object to the ALJ's analysis of the opinion evidence, subjective statements of record, or VE testimony. All of those arguments have been waived. *Underwood v. Saul*, 805 F. App'x 403, 406 (7th Cir. 2020) (arguments not raised before the district court are waived). In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in concluding that she does not meet or equal a listed mental impairment; (2) improperly omitted any mental limitations from the RFC for January 10, 2017 through April 12, 2017; and (3) erred in finding that she experienced medical improvement as of November 13, 2018. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

**A.     Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[3]  20

---

[3]     Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

4

C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion."); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

5

**B.     Analysis**

    **1.     Listing Level Severity**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in concluding that her mental impairments do not meet or equal Listings 12.03 (schizophrenia spectrum and other psychotic disorders) and 12.06 (anxiety and obsessive-compulsive disorders). "The Listings involve cases where the impairment(s) is so severe that there is no need to evaluate the limits of what a claimant can actually do; thus, if a claimant satisfies the requirements of a Listing, she is presumptively disabled and no further consideration is required." *Acera B. v. Saul*, No. 20 C 1674, 2021 WL 2222605, at *3 (N.D. Ill. June 2, 2021). Plaintiff "bears the burden of proving h[er] condition meets or equals a listed impairment" and "must satisfy all of the criteria in [a] Listing in order to receive an award of disability insurance benefits." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

To meet or equal Listings 12.03 and 12.06, Plaintiff must satisfy the requirements of paragraphs A and B, or paragraphs A and C. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(A)(1). Plaintiff challenges the ALJ's finding solely with respect to the paragraph B criteria, which require her to show an extreme limitation of one, or marked limitation of two, areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E)). The ALJ determined that Plaintiff is only moderately limited in each of these areas and so is not presumptively disabled. The Court finds no error in this assessment.

6

First and foremost, the record contains no medical opinions indicating that Plaintiff ever suffered from a listing-level mental impairment. In the May 9, 2017 initial state agency review of Plaintiff's claim, there was no mention of any psychological conditions or limitations at all, much less ones that met or equaled a listing. (R. 58-74). The ALJ found this review "persuasive and logical" for the period January 10 through April 12, 2017 given the complete absence of any psychological complaints or treatment. (R. 1063). On January 18, 2018, state agency reviewer Russell Taylor, Ph.D., concluded that Plaintiff was not disabled at step three of the analysis because she had at most moderate limitations in the four areas of mental functioning. (R. 83, 98). The ALJ found this assessment persuasive for the period April 13, 2017 through the date of the decision. (R. 1063-64). Plaintiff disagrees with this determination, but fails to identify any physician who reached a contrary conclusion. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) ("The ALJ expressly relied upon the medical judgment of the state-agency consultants [in determining medical equivalence], and their uncontradicted opinions constitute substantial evidence.").

Rather than provide medical support for a finding of presumptive disability, Plaintiff speculates that she may suffer from marked or severe limitations because, for example, her symptoms could wax and wane, or her mental illness itself may have prevented her from taking medication or pursuing more aggressive treatment. (Doc. 14, at 9-10). Of course, mere supposition as to the severity of symptoms and their medical equivalence is not sufficient. *See Erica V. v. Saul*, No. 20 C 1106, 2020 WL 6381364, at *4 (N.D. Ill. Oct. 30, 2020) (plaintiff's argument that her symptoms were equivalent in severity to those described in a listing was insufficient to demonstrate medical equivalence where she did

7

not identify any evidence from medical experts regarding equivalency as required under SSR 17-2p). Notably, even Amin N. Daghestani, M.D., the psychiatrist who evaluated Plaintiff for the Veteran's Administration ("VA") and first diagnosed her with PTSD in May 2017, determined that she had at most mild to moderate mental limitations in each functional area. (R. 406, 1059). In addition, the only medical records Plaintiff cites as evidence of medical equivalence are from the closed period of disability, which is not at issue on appeal. (Doc. 14, at 10-11).

Viewing the record as a whole, the ALJ did not err in accepting the uncontradicted state agency opinions that Plaintiff does not satisfy the paragraph B criteria necessary to meet or equal a listing for mental disorders. Plaintiff's request to remand the case for further consideration of Listings 12.03 and 12.06 is therefore denied.

### 2. Mental RFC (January 10 through April 12, 2017)

Plaintiff next argues that the ALJ erred in finding that she had no deficits in her mental functioning from the January 10, 2017 alleged disability onset through April 12, 2017. (Doc. 14, at 11-14). A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Anna-Marie L. v. Kijakazi*, No. 21 C 50354, 2022 WL 4610120, at *2 (N.D. Ill. Sept. 30, 2022) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ did not include mental limitations in the RFC prior to April 13, 2017 because throughout that period, Plaintiff received no treatment for any psychiatric

8

impairments, had normal mental status examinations, exhibited no mental health symptoms, and was not prescribed any psychotropic medications. (R. 1057, 1063). The Court finds no error in this assessment.[4] On December 3, 2016, Plaintiff went to the VA emergency department with bilateral hand pain and was described as fully alert and oriented. (R. 336, 339). During an initial visit at the VA women's clinic on December 7, 2016, Plaintiff denied experiencing any symptoms of depression, was once again fully alert and oriented, and tested negative on a screening for PTSD. (R. 329-31). At follow-up appointments on March 8 and April 4, 2017, Plaintiff's sole complaint was wrist and hand pain, and she remained fully alert and oriented. (R. 309, 314). Plaintiff's only medications at that time were ibuprofen/Tylenol as needed. (R. 310, 315, 1063).

The first mention of any mental health struggles occurred several weeks after the April 13, 2017 start date for the closed period of disability. In her May 2, 2017 Function Report, Plaintiff stated that she does not handle stress well because "anxiety kicks in fast." (R. 218). A few weeks later, on May 23, 2017, Dr. Daghestani assessed Plaintiff with PTSD and a variety of mild to moderate mental limitations. (R. 398-407). Plaintiff finds it impossible to believe that the symptoms she was experiencing in late May 2017 were not also present from January to mid-April 2017. (Doc. 14, at 12-14). Yet she does not cite a single record documenting psychological problems during that earlier period. *See Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) (plaintiff bears the burden of establishing both the existence, and limiting effects of a medical condition). Nor does

---

[4] Though the ALJ indicated that Plaintiff has had severe mental impairments since January 10, 2017 (R. 1055), that appears to be a drafting error as it is clear from the decision that the ALJ found no mental impairments prior to April 13, 2017. (R. 1057, 1063). Under the harmless error standard, the mistake in articulation does not justify a remand. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)) ("[T]he harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.").

she address the normal findings cited above or explain how they support her claim of disability prior to April 13, 2017. In such circumstances, it is Plaintiff and not the ALJ who is engaging in a selective discussion of the evidence. *Cf. Gerstner v. Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018) (ALJ erred by focusing on evidence of a positive mood and affect while ignoring diagnoses of depression and anxiety disorder).

For similar reasons, the ALJ did not err in failing to consider that Plaintiff's mental impairment may have prevented her from "taking her prescribed medicines or otherwise submitting to treatment." (Doc. 14, at 10) (citing *Kangail v. Barnhart*, 454 F.3d 627, 630-31 (7th Cir. 2006)). Plaintiff's mental examinations prior to April 13, 2017 were normal even without prescription medication or therapy. And since Plaintiff's only physical complaint (both to physicians and in her May 2, 2017 Function Report) related to hand and wrist pain (R. 212-20), there is no merit to her argument that the ALJ should have considered the psychological impact of a slew of other physical ailments not found in the medical record, such as headaches, musculoskeletal impairments, or "widespread, chronic pain." (Doc. 14, at 13). *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) ("Crucially, however, an ALJ need only include limitations that are supported by the medical record."). Indeed, it is entirely unclear what kinds of work restrictions Plaintiff believes might be appropriate because she "hypothesizes none." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

Also unavailing is Plaintiff's objection that the ALJ did not provide an adequate basis for making April 13, 2017 the disability start date. In Plaintiff's view, it is "inconceivable" that she was capable of full-time employment on April 12, 2017 and suddenly became unable to work one day later. (Doc. 14, at 14). To be sure, the ALJ

reasonably could have found Plaintiff disabled as of May 23, 2017, the date she first presented with psychological problems and received a related diagnosis. Instead, the ALJ considered Plaintiff's subjective testimony and gave her the benefit of the doubt that she was disabled more than a month earlier during a period when there was no evidence of psychiatric symptoms. (R. 1063). This does not constitute reversible error.

Viewing the record as a whole, the ALJ properly considered the evidence of record in finding that Plaintiff had no mental limitations during the three-month period from January 10, 2017 through April 12, 2017. That decision is supported by substantial evidence, and Plaintiff's request to remand the case for further consideration of this issue is denied.

### 3. Medical Improvement

Plaintiff finally argues that the case must be reversed or remanded because the ALJ erred in finding that she experienced medical improvement as of November 13, 2018. (Doc. 14, at 14-15). Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1). A finding of decreased medical severity must be based on "changes in the symptoms, signs or test results associated with [the claimant's] impairment(s)." *Id.*; *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011). "When, as here, the ALJ finds the claimant disabled for a closed period in the same decision in which she finds medical improvement, the severity of the claimant's current medical condition is compared to the severity of the condition as of the disability onset date." *Wofford v. Berryhill*, No. 16 C 4185, 2017 WL 1833186, at *4 (N.D. Ill. May 8, 2017).

11

### a. Physical RFC

The ALJ determined that both prior to and during the period of disability, Plaintiff experienced symptoms of carpal tunnel syndrome that impacted her ability to perform physical work. He thus limited Plaintiff to light work with: frequent operation of hand controls; frequent handling and fingering of objects; no climbing of ladders, ropes, or scaffolds; no working at unprotected heights; no operating moving mechanical parts or commercial vehicles; and no handling of objects that vibrate. (R. 1061-63, 1066). Starting November 13, 2018, however, Plaintiff experienced medical improvement allowing her to perform medium work. (R. 1071). The evidence amply supports this determination.

On December 3, 2016, Plaintiff complained of bilateral hand parasthesias that had worsened over the prior two weeks. (R. 336). She received hand splints but continued to experience bilateral tingling. (R. 306, 339). On January 20, 2017, Plaintiff's strength was 4/5 but a nerve conduction and EMG study revealed moderate to severe bilateral carpal tunnel syndrome. (R. 294). The doctor prescribed gabapentin, recommended that Plaintiff continue to wear wrist splints, and approved the use of Tylenol. (R. 294-95, 319-20). At a follow-up appointment on March 8, 2017, Plaintiff reported ongoing pain and expressed interest in a surgical consultation. (R. 315). The following month, on April 4, 2017, Plaintiff complained of numbness and tingling in both hands and the doctor indicated that she would be scheduled for bilateral carpal tunnel and left cubital tunnel release surgery. (R. 308). Following some delays, Plaintiff underwent left carpal and cubital tunnel release surgery in March 2018. (R. 856-59, 993, 1068). Significantly, there is no evidence that she complained about hand pain or received treatment for any physical condition after that date. (R. 1072-73). In fact, during psychological evaluations

12

on August 16, 2018 and June 20, 2019, Plaintiff rated her pain as 0. (R. 1042, 1068, 1289).

Plaintiff does not confront this evidence or explain why she was incapable of medium work as of November 13, 2018. Instead she states in conclusory fashion that (1) the absence of complaints does not reflect an increase in functioning, and (2) improvement in carpal tunnel symptoms does not relate to an increased ability to lift, carry, push, and pull. (Doc. 14, at 14). These unsupported arguments in no way establish that Plaintiff was more limited than the ALJ found, particularly absent record evidence of continued hand problems or medical opinions endorsing greater restrictions. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("The lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal.").

Moreover, even assuming Plaintiff remained restricted to light work after November 12, 2018, the ALJ reasonably relied on the VE's testimony in identifying a significant number of light jobs that Plaintiff could still perform, including Laundry Sorter, Gasket Inspector, Mail Clerk, Assembler Bicycles II, Folding Machine Feeder, Finishing Machine Operator, and Housekeeping Cleaner. (R. 1075-76, 1125-28, 1131-32). Any error the ALJ may have made in concluding that Plaintiff could handle medium work beginning November 13, 2018 is therefore harmless. *Wilder*, 22 F.4th at 654; *Butler*, 4 F.4th at 504.

Viewing the record as a whole, the ALJ did not commit reversible error in finding that Plaintiff experienced medical improvement in her carpal tunnel symptoms allowing

13

her to engage in both light and medium work as of November 13, 2018. Plaintiff's request to remand the case for further consideration of this issue is denied.

### b. Mental RFC

Turning to Plaintiff's psychological functioning, the ALJ found that during the closed period of disability, Plaintiff had the mental RFC to perform simple, unskilled work tasks not exceeding a reasoning level of 1, meaning she was able to apply commonsense understanding to carry out simple one- to two-step instructions. In addition, Plaintiff was able to deal with standardized situations with only occasional or no variables in or from these situations encountered on the job. Finally, Plaintiff would be off task more than 15 percent of the workday and/or absent from work two or more days per month. (R. 1066). This last restriction rendered Plaintiff incapable of performing her past relevant work, or any other jobs available in the national economy. (R. 1069-71, 1130) (VE testimony that there were no competitive jobs available for a person who was "off task more than 15% of the work time or was absent more than one day per month."). Starting on November 13, 2018, Plaintiff's RFC remained largely unchanged, except the ALJ found that she would no longer be off task or absent a work-preclusive amount of time. (R. 1071-72). The ALJ accepted the VE's testimony that a person with this mental RFC could perform all of the light jobs identified earlier, plus the medium level jobs of Laundry Laborer, Machine Feeder, and Factory Helper. (R. 1075-76).

In finding Plaintiff disabled during the closed period, the ALJ considered her medications, course of treatment, complaints about her symptoms, and medical observations. As noted earlier, Dr. Daghestani diagnosed Plaintiff with PTSD on May 26, 2017. At that time, she endorsed symptoms of distressing memories, physiological

reactions to internal or external cues, avoidance of or efforts to avoid external reminders that arouse memories of events, diminished interest or participation in significant activities, feelings of detachment from others, irritability, hypervigilance, sleep disturbance, social withdrawal, agitation anxiety, worry, some suspiciousness, depressed mood, fatigue, and occasional feelings of worthlessness. (R. 398-99, 405-06, 1067). On exam, Plaintiff exhibited appropriate affect, unimpaired judgment, and no hallucinations or homicidal ideations. (R. 405).

More than six months later, on January 9, 2018, Plaintiff saw Jeffrey Karr, Ph.D., for a consultative examination in connection with her April 13, 2017 applications for disability benefits. She reported significant sleep problems, sensitivity to loud noises, and a reluctancy to go out or take the bus, but she was living alone, self-sufficient aside from neglecting laundry and chores, and not on any medication. (R. 738, 739, 1067). On exam, Plaintiff appeared visibly anxious and was "periodically rubbing her hands and eyes, exhibiting a noticeably shaky leg." (R. 739, 1067). She spoke in a "notably low-volume voice" and though she answered questions coherently, her eye contact was limited because she periodically glanced out the window in a "seemingly vigilant manner." (*Id.*). Dr. Karr documented a dysphoric mood and constricted affect, and noted that Plaintiff discouraged easily and exhibited limited persistence. (*Id.*). He assessed PTSD and unspecified depressive disorder. (R. 740).

On January 29, 2018, Plaintiff had a psychiatric assessment at the VA. Plaintiff stated that she was always angry and had difficulty being around people. (R. 872). As a result, she only went out one to two times per week, preferring to stay home instead. (R. 873). Plaintiff also endorsed one to two mild panic attacks per month, a low/sad mood

15

most days, lack of enjoyment in hobbies, fatigue, sleep disturbances, lack of motivation, irritability, nightmares twice per week, and hypervigilance. (R. 873-74, 1067). She further complained of being easily startled and repeatedly checking doors and locks. (R. 874). On exam, Plaintiff was alert, cooperative, and reasonable with normal speech, a flat affect, good judgment and insight, and a normal and coherent thought process. (R. 876-77). At the same time, Plaintiff rapidly tapped her foot during the entire exam, appeared startled and anxious when doors shut or there were sudden noises, and was "checking door/surroundings." (R. 877). The doctor diagnosed generalized anxiety, mild to moderate major depressive disorder, insomnia, and PTSD. (R. 877, 881). She prescribed hydroxyzine for anxiety (R. 881) and assessed Plaintiff with a 50% VA disability rating. (R. 873, 1067).

On February 1, 2018, Plaintiff had an initial mental health consultation with Anastasia McRae, LCSW, from the VA. She reported trouble sleeping, being angry all the time, and feeling annoyed with people. (R. 869, 1068). Plaintiff's affect was flat, her mood was depressed, and she was "guarded, sometimes suspicious," but she reported no suicidal or homicidal ideations. (R. 869-70). Plaintiff never returned to Ms. McRae but on April 11, 2018, she sought medication from St. Bernard Hospital and was given fluoxetine and Seroquel (quetiapine) for depression and anxiety. (R. 1029, 1068). She had no delusions, no suicidal ideations or plans, intact thought process, and good impulse control. (R. 1032).

Between June 27, 2018 and October 24, 2018, Plaintiff attended five psychotherapy sessions with Tade O. Akere, Ph.D. At each, Plaintiff expressed no desire to continue living; homicidal ideations; reduced eating; emotional lability; high irritability;

depression; loneliness; anhedonia; social withdrawal; decreased productivity/ effectiveness; anxiety with excessive sweating; paranoia; and feelings of persecution. (R. 971, 975-80, 1068). On exam, Plaintiff generally exhibited: guarded behavior; soft speech; visual and auditory hallucinations; homicidal ideation; a sad mood; and a flat, sad, and anxious affect. Dr. Akere assessed schizoaffective disorder, PTSD, and a single episode of depressive disorder, and made adjustments to Plaintiff's medications (fluoxetine and quetiapine). (R. 972, 974, 976, 978, 980, 1068). After October 24, 2018, Plaintiff stopped seeing Dr. Akere but received medications from St. Bernard Hospital.

The ALJ determined that Plaintiff medically improved at this point. On November 13, 2018, Plaintiff was coherent, fully oriented, sleeping well, and stable with no changes needed to her prescriptions. (R. 1045, 1072). At follow-up appointments on February 12 and June 20, 2019, Plaintiff remained stable, fully oriented, and coherent. Her affect was described as pleasant and she still did not need medication adjustments. (R. 1046, 1072, 1291). Nearly seven months later, on January 16, 2020, Plaintiff was fully oriented, coherent, and stable with a bright affect, and once again obtained refills of her same medications. (R. 1072, 1292, 1294). The last appointment of record occurred more than a year later on February 11, 2021. Though the pandemic likely contributed to the delay in treatment, Plaintiff did not require any telehealth appointments or hospital visits during that period, and there continued to be no changes made to her medications. (R. 1072, 1297).

The ALJ found it significant that despite this sporadic treatment, Plaintiff: did not require any changes to her medication regimen; was routinely described as stable, alert, and pleasant; and never again complained to her health care providers of homicidal or

17

suicidal ideations, irritability, panic attacks, paranoia, or other symptoms of depression or anxiety. (R. 1072, 1073). To give Plaintiff "the full benefit of her claim," the ALJ "maintain[ed] limitations to only one- to two-step tasks along with social limitations." (R. 1073). But the ALJ determined that Plaintiff would no longer be off task more than 15 percent of the workday or absent more than once per month. (*Id.*). Plaintiff disputes this conclusion but fails to address the two years' worth of essentially normal findings or explain how they support her claim of continued disability. She also does not identify any physician of record who opined that she has greater limitations than those found by the ALJ. *Tutwiler*, 87 F.4th at 860.

Viewing the record as a whole, the ALJ satisfied his "minimal" articulation requirement in finding medical improvement in Plaintiff's mental functioning as of November 13, 2018. *Warnell*, 97 F.4th at 1053. The case need not be remanded for further consideration of this issue.

## **CONCLUSION**

For the reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is denied, and the Commissioner's motion for summary judgment [15] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: June 26, 2024

_Sheila Finnegan_
SHEILA FINNEGAN
United States Magistrate Judge